WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


CHADWICK PAUL STRAWN,                    )
                                         )
                                         )
                      Plaintiff,         )
                                         )
          vs.                            )
                                         )
NANCY A. BERRYHILL, Acting               )
Commissioner, Social Security Administration,  )
                                         )          No. 2:16-cv-3249-HRH
                      Defendant.         )
_____  )


O R D E R

        This is an action for judicial review of the denial of disability benefits under Title II

and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff

Chadwick Paul Strawn has timely filed his opening brief,[1] to which defendant Nancy A.

Berryhill has responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

        On July 23, 2010, plaintiff filed applications for disability benefits under Title II and

_____

        [1]Docket No. 12. Defendant contends that plaintiff's opening brief failed to comply
with LRCiv 7.1(b)(1) because it contains 28 full lines of text plus a proportional font and
double spacing. Plaintiff concedes that his opening brief did not technically comply with
LRCiv 7.1(b)(1) and corrects the problem in his reply brief. Reply Brief for Plaintiff at 1,
Docket No. 16.

        [2]Docket No. 13.

Title XVI of the Social Security Act. Plaintiff alleged that he became disabled on July 8, 2010. Plaintiff alleges that he is disabled because of seronegative spondylo-arthopathy, lumbar spinous, degenerative disk disorder, and left hip pain. Plaintiff's applications were denied, and he requested a hearing. After a hearing, an administrative law judge (ALJ) denied plaintiff's applications on May 22, 2012. Plaintiff filed a request for review of the ALJ's unfavorable decision, and on February 18, 2014, the Appeals Council remanded the case to the ALJ for further proceedings. On July 18, 2014, a second administrative hearing was held. After that hearing, the ALJ again denied plaintiff's applications. Plaintiff sought review of this unfavorable decision, and on July 25, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's February 19, 2015 decision the final decision of the Commissioner. On September 23, 2016, plaintiff commenced this action in which he asks the court to find that he is entitled to disability benefits.

## General Background

Plaintiff was born on July 16, 1966. He was 47 years old at the time of the July 2014 administrative hearing. Plaintiff has a 10th grade education. Plaintiff lives in a house with his mother. Plaintiff's past relevant work includes work as an order puller and a telephone technical support manager.

## The ALJ's Decision

The ALJ first determined that plaintiff "meets the insured status requirements of the

Social Security Act through December 31, 2015."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since July 8, 2010, the alleged onset date...."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease; left anterior labral tear; femoral acetabular impingement;

───────────────

[3]Admin. Rec. at 26.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 26.

ankylosing spondylitis; spondyloarthopathy; status post right colectomy and sigmoid resection; [Crohn's] disease; short bowel syndrome; depressive disorder; and an anxiety disorder, not otherwise specified...."[6]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7] The ALJ considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 5.01 (digestive system impairments), 5.06 (inflammatory bowel disease), 5.07 (short bowel syndrome), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). The ALJ considered whether the paragraph B criteria were met and found that plaintiff had no restrictions in activities of daily living; moderate difficulties with social functioning; moderate difficulties with regard to concentration, persistence or pace; and no episodes of decompensation.[8] The ALJ also considered whether the paragraph C criteria were met and found that they were not.[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir.

---

[6]Admin. Rec. at 27.

[7]Admin. Rec. at 27.

[8]Admin. Rec. at 28.

[9]Admin. Rec. at 28.

2009).  The ALJ found that plaintiff had

> the residual functional capacity to perform sedentary work as
> defined in 20 CFR 404.1567(a) and 416.967(a) except for the
> following additional limitations:  The claimant is capable of
> standing and walking for 4 hours and sitting for 6 hours during
> an 8-hour workday.  He is capable of occasionally climbing
> ramps and stairs; however [he is] precluded from climbing
> ladders, ropes and scaffolds.  He is capable of frequent balanc-
> ing, stooping, kneeling, crouching and crawling.  The claimant
> should not be exposed to hazards such as moving machinery and
> unprotected heights.  He requires ready access to a restroom,
> which is defined as a workstation within a five-minute walk from
> a restroom.  The claimant retains his ability to perform simple,
> routine and repetitive work tasks with no public contact.  He is
> precluded from a fast-paced production rate position but is able
> to perform goal-oriented work that allows for some variability in
> ... work [pace].[10]

The ALJ found plaintiff's pain and symptom statements less than credible because
plaintiff's "continued unemployment [may be] due to reasons unrelated to his alleged
impairments[;] he "has a long history of conservative treatment for back pain[;]" the medical
evidence did not support his allegations; and his depression and anxiety "have been
effectively treated by counseling and medication."[11]

The ALJ "was unable to assign significant" weight to the opinions of Dr. Michels.[12]

---

[10]Admin. Rec. at 29.  In the ALJ's decision, the last word of the RFC is "workplace."
The hypothetical that the ALJ gave the vocational expert at the hearing included a limitation
"that would allow for some variability in work pace."  Admin. Rec. at 79.  Thus, it appears
that the use of "workplace" in the ALJ's decision was a typographical error.

[11]Admin. Rec. at 30-31.

[12]Admin. Rec. at 32.  Dr. Michels' opinions are discussed below in detail.

The ALJ gave little weight[13] to the opinions of Dr. Young,[14] Dr. Fina,[15] Dr. Kalena,[16] and

Nurse Mona.[17]  The ALJ gave some weight[18] to the third-party testimony of Sheila Riggs,

plaintiff's mother.[19]  And, the ALJ gave minimal weight[20] to the testimony of Michael

---

[13]Admin. Rec. at 32.

[14]Dr Young's opinion is discussed below in detail.

[15]On December 10, 2010, Charles Fina, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 4 hours and sit for 6 hours; was unlimited as to pushing and pulling; could occasionally climb ramps/ stairs/ladders/ropes/scaffolds; could frequently balance and stoop; could occasionally kneel, crouch, and crawl; and should avoid concentrated exposure to hazards. Admin. Rec. at 123-124.

[16]On June 17, 2011, Vicki Kalena, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 4 hours; could sit for 6 hours; was unlimited as to pushing and pulling; could occasionally climb ramp/stairs/ladders/ropes/scaffolds; could frequently balance and stoop; occasionally kneel, crouch, and crawl; and should avoid concentrated exposure to hazards. Admin. Rec. at 133-134.

[17]On March 27, 2012, Susan Mona, an ANP at plaintiff's pain clinic, opined that plaintiff often experienced pain of sufficient severity to interfere with his attention and concentration; that in summer he would often experience deficiencies of concentration, persistence, or pace resulting in the failure to complete tasks in a timely manner; and that in winter he frequently would experience deficiencies of concentration, persistence, or pace resulting in the failure to complete tasks in a timely manner.  Admin. Rec. at 537-538.

[18]Admin. Rec. at 31.

[19]Riggs completed a third-party function report on April 22, 2011.  Admin. Rec. at 309-316.

[20]Admin. Rec. at 31.

Arciero, plaintiff's former boss at Coastal Web Online.[21]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[22]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" including working as a call out operator or an addresser.[23] This finding was based on the testimony of the vocational expert.[24]

The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from July 8, 2010, through the date of this decision...."[25]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence

---

[21]Arciero opined that plaintiff "cannot handle any type of office or manual labor job that requires much more than one hour of continuous work in a chair or standing position." Admin. Rec. at 331.

[22]Admin. Rec. at 33.

[23]Admin. Rec. at 33-34.

[24]Sandra Richter testified as the vocational expert at the July 2014 hearing. Admin. Rec. at 74-86.

[25]Admin. Rec. at 34.

is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred in rejecting Dr. Michels' opinions. On April 11, 2012, Dr. Michels opined that plaintiff could occasionally and frequently lift/carry less than 10 pounds; could stand/walk for less than 2 hours; could sit for less than one-half hour; needs to alternate between sitting and standing every 15-30 minutes; could occasionally crawl and reach; could frequently climb, balance, kneel, handle, do fine manipulation, and feel; could continuously stoop and crouch; and should avoid heights, moving machinery, and temperature extremes.[26] On July 7, 2014, Dr. Michels opined that plaintiff could occasionally and frequently lift/carry less than 10 pounds; could stand/walk less than 2 hours; could sit less

---

[26]Admin. Rec. at 543-545.

than 6 hours; would need to alternate sitting and standing every 1/2 hour; could never climb, crouch, crawl, or reach; could occasionally balance, stoop, kneel, and feel; could frequently handle and do fine manipulation; and should avoid heights, moving machinery, and temperature extremes.[27]  Dr. Michels also opined that plaintiff's pain would frequently interfere with concentration and attention and frequently cause him to "experience deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)[.]"[28]

Dr. Michels was a treating physician.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Id.  (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Dr. Michels' opinions were contradicted by Dr. Fina's and Dr. Kalena's opinions.[29]  Thus, the ALJ was required to provide specific and legitimate reasons

---

[27]Admin. Rec. at 814-816.

[28]Admin. Rec. at 817-818.

[29]Although the ALJ gave Dr. Fina's and Dr. Kalena's opinions "little weight," the ALJ
(continued...)

for rejecting Dr. Michels' opinions.

The ALJ rejected Dr. Michels' opinions because 1) "[t]he course of treatment is not what would be expected if the claimant were as limited as Dr. Michel[s] reported[,]" 2) "the claimant's activity level is inconsistent with the reported restrictions[,]" and 3) "there are inconsistencies within the opinions[.]"[30] Plaintiff argues that these were not specific and legitimate reasons.

The ALJ's first reason, that the course of treatment was not what would be expected, was not a specific reason. The ALJ did not offer any specifics as to what treatment would be expected if plaintiff had the limitations that Dr. Michels found. "[T]he complete lack of meaningful explanation gives this court nothing with which to assess [this reason's] legitimacy." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006).

As for the second reason, that the limitations assessed by Dr. Michels were inconsistent with plaintiff's reported activity level, defendant argues that this was a legitimate reason because Dr. Michels found that plaintiff could only sit for 30 minutes even though plaintiff reported that he could go fishing for 3-4 hours. But, as plaintiff is quick to point out, he reported that "I fish because it allows me to be able to lie down when I need to or walk around

---

[29](...continued)
stated that their "opinions support the conclusion ... that [plaintiff] is not precluded from performing all work." Admin. Rec. at 32.

[30]Admin. Rec. at 32.

or stand."[31]  The other activities that the ALJ pointed to, such as plaintiff helping his mother and father with chores and gardening, are not inconsistent with the limitations that Dr. Michels assessed.  The fact that plaintiff engaged in some limited activities does not mean that he was not as limited as Dr. Michels opined.  See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (finding that "a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and Ghanim's daily activities. Although Ghanim performed some basic chores and occasionally socialized, the record also reveals that he relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments").

The ALJ's third reason, that there were inconsistencies in Dr. Michels' opinions, is not sufficiently specific for the court to review.  The ALJ did not identify what the inconsistencies were in Dr. Michels' opinion but rather just stated that there were inconsistencies.  Without any explanation from the ALJ as to what inconsistencies she found in Dr. Michels' opinions, there is nothing for the court to review.

Defendant also contends that the ALJ found that Dr. Michels' opinions were inconsistent with his treatment records, but there is no such finding in the ALJ's decision. The court can only "review the reasons the ALJ asserts." Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Here, none of the reasons the ALJ asserted for rejecting Dr. Michels' opinions were specific and legitimate.

---

[31]Admin. Rec. at 298.

Plaintiff next argues that the ALJ erred in rejecting Dr. Young's opinion. Dr. Young opined that

> [c]ognitively, [plaintiff] presents as an individual who has the average ability to learn. His memory function appears to be largely intact. Organization and planning skills appear to be adequate. His concentration and persistence is affected by his level of pain that he is experiencing, general discomfort, and secondary effects of his medications. He also gets discouraged and anxious about his present circumstances and limitations. He has very limited social contact outside of his immediate family. He is adapting as best he can to his present circumstances. He needs an environment where there is considerable flexibility in execution of duties and responsibilities.[32]

Dr. Young was an examining source. "The opinion of an examining doctor ... can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830–31.

The ALJ rejected Dr. Young's opinion because it was "based on the claimant's subjective reports of symptoms and limitations associated with pain, which is outside the doctor's area of expertise."[33] This was not a specific and legitimate reason because the ALJ did not explain why Dr. Young, who performed a mental status exam and observed plaintiff during the evaluation, would not be able to offer an opinion about how plaintiff's physical pain impacts his concentration and persistence. While an "ALJ [is] not required to give any weight to a psychologist's opinion on physical impairments[,]" Guerrero v. Colvin, No. CV-

_____

[32]Admin. Rec. at 479.

[33]Admin. Rec. at 32.

13-00982-TUC-DTF, 2015 WL 1442877, at *6 (D. Ariz. Mar. 30, 2015), Dr. Young did not provide any opinion as to plaintiff's physical impairments. Rather, Dr. Young opined that plaintiff's physical pain would impact plaintiff's mental functioning. Dr. Young was qualified to offer such an opinion.

Plaintiff next argues that the ALJ erred in finding his pain and symptom statements less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding

required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).  "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)).  "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]"  Id. (internal citations omitted).  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]"  Id. at 1112-13 (internal citations omitted).  "Even where those activities suggest some difficulty [in] functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  Id. at 1113.

Plaintiff first objects to the ALJ's statement that "the claimant's statements concerning the intensity, persistence and limiting effects of [his pain and] symptoms are not entirely credible to the extent they are inconsistent with the residual functional capacity assessment."[34] Plaintiff argues that this is "meaningless boilerplate" that "'puts the cart before the horse, in

_____

[34]Admin. Rec. at 30.

the sense that the determination of capacity must be based on the evidence, including the claimant's testimony, rather than forcing the testimony into a foregone conclusion.'" Moore v. Colvin, 743 F.3d 1118, 1112 (7th Cir. 2011) (quoting Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012)).

But as defendant points out, the "use of such boilerplate is problematic only when it appears in the absence of a more thorough analysis." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1170 (10th Cir. 2012) (citation omitted). Here, the ALJ gave four specific reasons for finding plaintiff's pain and symptom statements less than credible: 1) plaintiff's "continued unemployment [may be] due to reasons unrelated to his alleged impairments[;]", 2) he "has a long history of conservative treatment for back pain[;]" 3) his depression and anxiety "have been effectively treated by counseling and medication;" and 4) the medical evidence did not support his allegations.[35] Plaintiff also seems to believe that the ALJ found his pain and symptom statements less than credible based on his activities of daily living.

As for this last reason, in the ALJ's discussion about plaintiff's RFC, the ALJ noted that plaintiff enjoys gardening, attends church, and had "traveled to California for discography...."[36] To the extent that the ALJ found plaintiff's pain and symptom statements less than credible based on his activities of daily living, this was not a clear and convincing reason. For one thing, it is not clear from the record whether plaintiff traveled to California

---

[35]Admin. Rec. at 30-31.

[36]Admin. Rec. at 31.

for discography or whether plaintiff had this done when he living in California prior to moving to Arizona. Moreover, the Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016.

The ALJ also found plaintiff's statements less than credible because plaintiff's unemployment was not related to his alleged impairments. This was not a clear and convincing reason. The ALJ noted that plaintiff had reported that "his former employer sold his company and went out of business...."[37] The ALJ seems to have concluded that plaintiff quit working because his employer sold the business and not because of his impairments. But this conclusion is not supported by the evidence in the record surrounding plaintiff's employment at Coastal Web Online. Plaintiff's former boss explained that "about three years ago, Chad was given permission to work half time at the office and half time at his home. During the last year, he often only worked from home. When the company was sold, the new management would not permit Chad to continue working in that capacity, and therefore terminated his employment."[38] This is consistent with plaintiff's testimony that his employer "set me up in my bedroom, a phone system and a computer that I was able to actually look up

---

[37]Admin. Rec. at 30.

[38]Admin. Rec. at 331.

on the ceiling and take my calls that way[.]"[39]  Plaintiff's losing his job when his employer sold the company was directly related to his impairments.

The ALJ next found plaintiff's statements less than credible because plaintiff had a long history of conservative treatment for his back.  This was not a clear and convincing reason.  The ALJ noted that plaintiff had never had back surgery and told his rheumatologist in November 2010 that his pain was improved with medication.[40]  Although the ALJ is correct that plaintiff had never had back surgery, there is no evidence in the record that back surgery was ever recommended, perhaps because as plaintiff testified, he is not a surgical candidate because his back problems are caused by an autoimmune issue.[41]  Although he did not have back surgery, plaintiff did have epidural injections and was prescribed narcotic medication for his back pain, a course of treatment which courts have found to not be conservative.  See, e.g., Garrison, 759 F.3d at 1015 (finding that the plaintiff's course of treatment, which included epidural injections, physical therapy, and pain medication, was not conservative, in part because it provided limited relief); Yang v. Barnhart, Case No. ED CV 04-958-PJW 2006 WL 3694857, *4 (C.D. Cal. Dec.12, 2006) (ALJ's finding that the plaintiff received conservative treatment was not supported by substantial evidence when the plaintiff's course of treatment included physical therapy, epidural injections, and several pain medications).

---

[39]Admin. Rec. at 104.

[40]Admin. Rec. at 30.

[41]Admin. Rec. at 67-68.

The ALJ also found plaintiff's pain and symptom statements less than credible because his depression and anxiety have been effectively treated by counseling and medication. This was a clear and convincing reason. Plaintiff responded well to his mental health treatment.[42] But, this finding only serves to discount plaintiff's statements as to his symptoms related to his mental impairments. Given that most of plaintiff's pain and symptom statements had to do with limitations flowing from his physical impairments, this reason provides inadequate support for the ALJ's overall adverse credibility finding.

And finally, the ALJ found that plaintiff's pain and symptom statements were not supported by the medical evidence. While lack of medical evidence is a factor "the ALJ can consider in his credibility analysis," it cannot "form the sole basis for discounting pain testimony[.]" Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Because the ALJ's other reasons for rejecting plaintiff's pain and symptom statements flowing from his physical impairments were not clear and convincing, this reason is not sufficient to support the ALJ's credibility finding as to plaintiff's pain and symptom statements associated with his physical impairments.

Plaintiff next argues that the ALJ erred in assessing his RFC. The ALJ found that plaintiff had

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for the following additional limitations: The claimant is capable of standing and walking for 4 hours and sitting for 6 hours during

_____

[42]Admin. Rec. at 846, 854, 859, 862, 863, 866.

an 8-hour workday. He is capable of occasionally climbing ramps and stairs; however [he is] precluded from climbing ladders, ropes and scaffolds. He is capable of frequent balancing, stooping, kneeling, crouching and crawling. The claimant should not be exposed to hazards such as moving machinery and unprotected heights. He requires ready access to a restroom, which is defined as a workstation within a five-minute walk from a restroom. The claimant retains his ability to perform simple, routine and repetitive work tasks with no public contact. He is precluded from a fast-paced production rate position but is able to perform goal-oriented work that allows for some variability in ... work [pace].[43]

Plaintiff argues that the ALJ's RFC is incomplete because the ALJ, at step three, found that he had moderate difficulties with regard to concentration, persistence, or pace,[44] but the ALJ then failed to include any limitations related to concentration, persistence, or pace in his RFC. This argument is based on <u>Lubin v. Comm'r of Soc. Sec. Admin.</u>, Case No. 11-35462, 2013 WL 485295 (9th Cir. Feb. 8, 2013). There, the court concluded that "[a]lthough the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination...." <u>Id.</u> at *2. The court explained that "[l]imiting Lubin 'to one to three step tasks due to pain and prescription drug/marijuana use' did not capture the limitation in concentration, persistence, or pace found by the ALJ. The work described by the vocational expert may still require the speed and concentration Lubin lacks." <u>Id.</u> Courts in this district have relied on <u>Lubin</u> and other unpublished Ninth Circuit cases to hold "that when an ALJ

---

[43]Admin. Rec. at 29.

[44]Admin. Rec. at 28.

finds a moderate limitation in concentration, persistence, or pace, the ALJ must include that limitation in the claimant's RFC." Lara v. Colvin, No. CV-13-01643-PHX-JZB, 2015 WL 1505817, at *9 (D. Ariz. Mar. 31, 2015) (collecting cases).

Here, the ALJ adequately accommodated plaintiff's moderate limitations as to concentration, persistence, or pace. The ALJ did not just limit plaintiff to "simple work" but also precluded him from working in a fast-paced production rate position. She also included a limitation that he would need "some variability in ... work p[]ace."[45]

Plaintiff also argues that the ALJ's RFC is not supported by substantial evidence because the ALJ gave little or no weight to all the medical opinions. Plaintiff argues that the ALJ "failed to make her determination on the basis of evidence adduced at the hearing[,]" which is error. Yang v. Shalala, 22 F.3d 213, 217 (9th Cir. 1994).

The ALJ did not, however, reject all of the medical opinions in this case. Although the ALJ gave little weight to the opinions of the non-examining state agency medical consultants because she found plaintiff to be more limited, she found that the state-agency opinions "support the conclusion reached in this decision that [plaintiff] is not precluded from performing all work."[46] The ALJ did not fail to make an RFC determination based on the evidence.

Because the ALJ erred as to Dr. Michels' opinions, Dr. Young's opinion, and in

---

[45]Admin. Rec. at 29.

[46]Admin. Rec. at 32.

assessing plaintiff's credibility, the court must determine whether to remand for an award of benefits or for further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

A remand for benefits would be appropriate here because the ALJ erred in rejecting Dr. Michels' opinions. No further development of the record is necessary as to his opinions. Dr. Michels opined that plaintiff could occasionally and frequently lift/carry less than 10 pounds; stand/walk for less than 2 hours; and sit for less than 6 hours.[47] The vocational expert testified that there would be no work for someone who was "limited to occasionally lifting

---

[47]Admin. Rec. at 816.

... or ... carrying less than 10 pounds" and who could "[s]tand or walk less than two hours in an eight-hour workday and sit[] for less than six hours in an eight-hour workday.[48]  Dr. Michels also opined that plaintiff's pain was would frequently interfere with concentration and attention and frequently cause plaintiff to "experience deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)."[49]  The vocational expert testified that there would be no work for someone who "would frequently experience pain sufficiently severe to interfere with attention and concentration" and "frequently experience deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner."[50]

## Conclusion

Based on the foregoing, the decision of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 7th day of August, 2017.

/s/ H. Russel Holland
United States District Judge

---

[48]Admin. Rec. at 84.

[49]Admin. Rec. at 817-818.

[50]Admin. Rec. at 84-85.